## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | | |
|---|---|---|
| uFaktory Oy, | ) | |
| | ) | |
| Petitioner, | ) | Cancellation No. _____ |
| | ) | |
| v. | ) | |
| | ) | |
| The Black Fives Foundation, | ) | |
| | ) | |
| Respondent. | ) | |

## PETITION FOR CANCELLATION

Petitioner uFaktory Oy ("**uFaktory**") believes that it is and will be damaged by the continued registration of marks owned of record by The Black Fives Foundation ("**BFF**") – Registration No. 3,104,596 for the mark RENS in standard characters ("**BFF Mark 1**") and Registration No. 4,892,180 for the mark RENS in stylized form ("**BFF Mark 2**"). uFaktory therefore petitions for cancellation of these registrations (together, the "**BFF Marks**").

As grounds for cancellation, uFaktory alleges as follows:

1. uFaktory markets, promotes, and sells footwear under the RENS brand through its website rensoriginal.com and other channels around the world, including in the United States.

2. On February 27, 2020, uFaktory filed application Serial No. 88/812,645 for the mark RENS in standard characters for "footwear" in Class 25 ("**uFaktory's Mark**"). A copy of the application is attached as Exhibit A.

3. In an office action dated May 18, 2020, the examining attorney for uFaktory's application cited the BFF Marks as barring registration of uFaktory's Mark under Section 2(d) of the Lanham Act. A copy of the office action is attached as Exhibit B.

1

4. uFaktory is and will be damaged by the continued registration of the BFF Marks.

**COUNT I**
**Fraud on the USPTO – BFF Mark 1**

1. On November 12, 2002, BFF's predecessor-in-interest, Black Fives, Inc., filed an intent-to-use trademark application with the PTO for BFF Mark 1. A copy of the application is attached as Exhibit C.

2. The application was signed by Claude Johnson, who is now the Executive Director of BFF.

3. On January 18, 2005, the PTO issued a Notice of Allowance.

4. On July 18, 2005, Black Fives, Inc., filed a Statement of Use with a specimen described as "These are images of 1) a garment bearing the mark RENS on the front center chest, and 2) a close up view of the mark RENS on the same garment." A copy of the statement of use is attached as Exhibit D.

5. The specimen is an image of a jersey against a white background with no indication of how it was being offered to consumers or used in commerce in any way.

6. On August 5, 2005, the PTO issued an office action refusing registration "because the proposed mark, as used on the specimen of record, is a decorative or ornamental feature of the goods and would not be perceived as a mark by the purchasing public."

7. On August 8, 2005, Black Fives, Inc., filed a response to the office action along with a substitute specimen described as "Image of front (right) and back (left) of hangtag used on the goods, showing the RENS mark (on the front) used to indicate source of goods." A copy of the response is attached as Exhibit E.

8. The substitute specimen was an image of what appears to be the front and back of an informational card describing a basketball player with no indication of how it was being offered to consumers or used in commerce in any way.

9. The PTO ultimately registered BFF Mark 1 on June 13, 2006, for the following goods in Class 25:

> Clothing, namely, shirts, shorts, jerseys, uniforms, hats, caps, scarves, headbands, jackets, coats, tops, pants, socks, shoes, footwear, boots, slippers, sneakers, athletic footwear, underwear, sleepwear, ties, bottoms, wristbands, sweatbands, hosiery, sweat shirts, sweat pants, t-shirts, swimwear, beachwear, dresses, jumpers, play suits, thermal underwear, boxer shorts, jeans, jumpsuits, skirts, overalls, leggings, warm-up suits, and compression shorts.

10. On February 28, 2011, Black Fives, Inc., filed a Preliminary Amendment signed by Claude Johnson to delete certain goods from the BFF Mark 1 registration so the amended identification of the goods would read as follows:

> Clothing, namely, shirts, jerseys, uniforms, hats, caps, jackets, coats, tops, pants, shoes, footwear, boots, sneakers, athletic footwear, bottoms, sweat shirts, sweat pants, t-shirts, play suits, and warm-up suits.

A copy of the preliminary amendment is attached as Exhibit F.

11. On December 27, 2011, the PTO issued a new certificate of registration for BFF Mark 1 reflecting the requested amendment to the identification of goods. A copy of the amended certificate of registration is attached as Exhibit G.

12. On June 13, 2012, Black Fives, Inc., filed a Combined Declaration of Use and Incontestability under Sections 8 & 15 signed by Claude Johnson with the PTO and submitted a specimen described as "An image of an athletic shoe bearing the mark, and a close up image of the same usage of the mark." A copy of the declaration is attached as Exhibit H.

13. The specimen is an image of a shoe against a solid background with no indication of how it was being offered to consumers or used in commerce in any way.

14.     On August 30, 2013, Black Fives, Inc., assigned its entire interest and goodwill in BFF Mark 1 to BFF. A copy of the assignment is attached as Exhibit I.

15.     On June 19, 2015, BFF filed a Combined Declaration of Use and Application for Renewal of Registration of a Mark under Sections 8 & 9 signed by Claude Johnson with the PTO and submitted a specimen described as "Photo of individual wearing a cap that bears the mark on its front panel." A copy of the declaration is attached as Exhibit J.

16.     As part of BFF's declaration of use, BFF expressly represented as follows:

For International Class 025, the mark is in use in commerce on or in connection with **all** goods/services . . . listed in the existing registration for this specific class: Clothing, namely, shirts, jerseys, uniforms, hats, caps, jackets, coats, tops, pants, shoes, footwear, boots, sneakers, athletic footwear, bottoms, sweat shirts, sweat pants, t-shirts, play suits, warm-up suits . . . .

17.     As part of BFF's declaration of use, BFF also expressly acknowledged as follows:

The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements and the like may jeopardize the validity of this submission, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

18.     On July 12, 2015, the PTO issued a notice of acceptance and renewal for BFF Mark 1.

19.     The representations BFF made in its June 19, 2015, declaration were false because BFF was not using BFF Mark 1 in commerce in connection with all of the goods identified in the BFF Mark 1 registration.

20.     BFF knew that these representations were false.

21.     BFF knowingly and intentionally made material misrepresentations to the PTO in order to induce the PTO to renew the BFF Mark 1 registration.

22.     The PTO relied on BFF's false representations in renewing the BFF Mark 1 registration.

4

23. The PTO would not have renewed the BFF Mark 1 registration but for BFF's false representations.

24. BFF's actions in the renewal of the BFF Mark 1 registration constitute fraud, thereby invalidating the BFF Mark 1 registration. Accordingly, the BFF Mark 1 registration should be canceled in its entirety.

**Fraud on the USPTO – BFF Mark 2**

25. On May 21, 2015, BFF filed a use-based trademark application with the PTO for BFF Mark 2 under Section 1(a) of the Lanham Act, 15 U.S.C. § 1051(a). A copy of the application is attached as Exhibit K.

26. The application was signed by Claude Johnson, the Executive Director of BFF.

27. The BFF Mark 2 application was for the following goods in Class 25:

> Clothing, namely, shirts, shorts, jerseys, uniforms, hats, caps, headbands, jackets, coats, tops, pants, socks, shoes, footwear, boots, sneakers, athletic footwear, underwear, sleepwear, ties, bottoms, wristbands, sweatbands, hosiery, sweat shirts, sweat pants, t-shirts, boxer shorts, jeans, warm-up suits, and compression shorts.

28. In support of its application for BFF Mark 2, BFF submitted a specimen described as "IMAGE OF A JERSEY AND FOOTWEAR BEARING THE MARK."

29. The jersey specimen is identical to the specimen filed with the statement of use in the BFF Mark 1 application on July 18, 2005 (Exhibit D).

30. The footwear specimen is identical to the specimen filed with the declaration of use for the BFF Mark 1 registration on June 13, 2012 (Exhibit H).

31. As part of BFF's declaration in support of the application, BFF expressly represented and acknowledged as follows:

> The signatory believes that: if the applicant is filing the application under 15 U.S.C. Section 1051(a), . . . the applicant or the applicant's related company or licensee is using the mark in commerce on or in connection with the

5

goods/services in the application . . . . The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements and the like may jeopardize the validity of the application or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

32. BFF made this declaration even though several goods included in the BFF Mark 2 application had been specifically deleted from the BFF Mark 1 registration by preliminary amendment filed on February 28, 2011 by BFF's predecessor-in-interest, Black Fives, Inc. (Exhibit F).

33. Specifically, the BFF Mark 2 application included the following goods that had been deleted from the BFF Mark 1 registration:

Shorts, headbands, socks, underwear, sleepwear, ties, wristbands, sweatbands, hosiery, boxer shorts, jeans, compression shorts.

34. The PTO registered BFF Mark 2 on January 26, 2016, for all of the goods identified in the application.

35. On April 22, 2020, BFF filed a Voluntary Amendment to delete the following goods from the BFF Mark 2 registration:

Headbands, underwear, sleepwear, ties, wristbands, sweatbands, boxer shorts, compression shorts.

A copy of the voluntary amendment is attached as Exhibit L.

36. There is no evidence that BFF has ever used BFF Mark 2 in connection with the goods that it seeks to delete from the BFF Mark 2 registration by voluntary amendment.

37. The representations BFF made in its May 21, 2015, application for BFF Mark 2 were false because BFF was not using BFF Mark 2 in commerce in connection with all of the goods identified in the BFF Mark 2 application.

38. BFF knew that these representations were false.

6

39. BFF knowingly and intentionally made material misrepresentations to the PTO in order to induce the PTO to register BFF Mark 2.

40. The PTO relied on BFF's false representations in registering BFF Mark 2.

41. The PTO would not have registered BFF Mark 2 but for BFF's false representations.

42. BFF's actions in the procurement of the BFF Mark 2 registration constitute fraud, thereby invalidating the BFF Mark 2 registration. Accordingly, the BFF Mark 2 registration should be canceled in its entirety.

### Fraud on the USPTO – Evidence of Use

43. There is no evidence that BFF has ever used the BFF Marks in connection with the following goods, all of which were at some point included in the applications and registrations for the BFF Marks:

> Headbands, underwear, sleepwear, ties, wristbands, sweatbands, boxer shorts, compression shorts.

44. There is no evidence that BFF is currently using the BFF Marks in commerce in connection with any of the goods remaining in the corresponding registrations, with the possible exception of t-shirts.

45. A screenshot of an online store showing BFF Mark 2 appearing on a t-shirt is attached as Exhibit M.

46. A Facebook page entitled "Fans of the Harlem Rens" contains a photo album entitled "Harlem Rens Merchandise," which contains the photo of a shoe that was used as a specimen filed with the declaration of use for the BFF Mark 1 registration on June 13, 2012 (Exhibit H), and with the application for BFF Mark 2 filed on May 21, 2015 (Exhibit K).

47. According to the information on the Facebook album, it was "updated 9 years ago," or 2011 at the latest.

48. A description of the album states, "To see more about these products, please visit: http://www.blackfives.com/gift-shop Additional customizable products are also available here: http://photos.blackfives.com." Screenshots of the album are attached as Exhibit N.

49. An attempted visit to the URL http://www.blackfives.com/gift-shop yields a 404 error, meaning that the page does not exist. A screenshot of the page is attached as Exhibit O.

50. An attempted visit to the URL http://photos.blackfives.com yields a message that the site cannot be reached. A screenshot of the page is attached as Exhibit P.

51. Images showing possible past use of the BFF Marks may be found on BFF's Instagram page located at https://www.instagram.com/blackfives/.

52. On July 9, 2015, BFF posted a photo of a jacket with BFF Mark 2 on the sleeve. A screenshot of the page is attached as Exhibit Q.

53. On August 29, 2015, BFF posted a photo of a cap with BFF Mark 2 on it. A screenshot of the page is attached as Exhibit R.

54. On September 27, 2015, BFF reposted a photo from another user showing shoes bearing BFF Mark 2 being worn by a person. The caption to the photo reads, "Remember these from 2006?" A screenshot of the page is attached as Exhibit S.

55. BFF's Instagram account contains no other more recent posts showing the BFF Marks on any of the goods covered by the corresponding registrations.

56. At the time BFF submitted its most recent declarations of use in support of the BFF Mark 1 registration (on June 19, 2015) (Exhibit J) and the BFF Mark 2 application (on May

21, 2015) (Exhibit K), BFF could not make a good-faith representation that it was using the BFF Marks in commerce in connection with all of the identified goods.

57. In its most recent declarations of use, BFF materially misrepresented that it was using the BFF Marks in connection with all of the identified goods with the intent to deceive the PTO and fraudulently procure and maintain the registrations for the BFF Marks.

58. Therefore, the registrations for the BFF Marks should be canceled in their entirety.

## COUNT II
## Abandonment

59. With the possible exception of t-shirts, even if BFF has ever properly used the BFF Marks in commerce, BFF has discontinued their use in connection with the goods covered by the respective registrations for the BFF Marks for at least the past three years with intent not to resume use.

60. BFF is presumed to have, and has, abandoned any trademark rights it may have in the BFF Marks.

61. uFaktory will be damaged by the continued registration of the BFF Marks.

WHEREFORE, uFaktory respectfully requests that this Petition for Cancellation be granted and that Registration Nos. 3,104,596 and 4,892,180 be cancelled in their entirety.

Date: July 9, 2020

Respectfully submitted,

*/s/ Evgeny Krasnov*
Evgeny Krasnov
Buzko Legal
33/8 Kuybysheva St., 3rd Floor
Saint Petersburg, Russia 197046
Tel.: +7 (499) 112-3347


Attorney for Petitioner